## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RHONDA MAGALLANEZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-07-CV-0973 XR (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Honorable Xavier Rodriguez**
      **United States District Judge**

### Introduction

Plaintiff Rhonda Magallanez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Magallanez is not disabled for the purposes of the Social Security Act (the Act) and denying Magallanez's applications for Disability Income Benefits (DIB) and Supplemental Security Insurance (SSI). Magallanez asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Magallanez asks the district court to reverse the decision and remand the case for further proceedings.

After considering Magallanez's brief in support of her complaint,[1] the brief in support of

---

[1] Docket entry # 13.

1

the Commissioner's decision,[2] Magallanez's reply brief,[3] the record of the SSA proceedings, the

pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and

the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C.

§ 636(b) and this district's general order, dated July 17, 1981, referring for disposition by

recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the

plaintiff's application for benefits.[4]

### Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided

by 42 U.S.C. §§ 405(g), 1383(c)(3).

### Administrative Proceedings

Based on the record in this case, Magallanez exhausted her administrative remedies prior to

filing this action in federal court.  Magallanez applied for DIB and SSI on September 26, 2003,

alleging disability beginning October 2, 2002.[5]  Magallanez did not identify a triggering event or

associate a medical condition for this date.  The Commissioner denied the application initially and

on reconsideration.[6]  Magallanez then asked for a hearing before an administrative law judge

---

[2]Docket entry # 18.

[3]Docket entry # 19.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 194 & 804.

[6]*Id*. at pp. 105-06, 807 & 815.

(ALJ).  A hearing was held before an ALJ on May 2, 2005.[7]  The ALJ issued a decision on May 17, 2005, concluding that Magallanez is not disabled within the meaning of the Act.[8]  After reviewing the ALJ's decision, the SSA Appeals Council remanded Magallanez's case to the ALJ to obtain additional evidence, and to make findings about Magallanez's fibromyalgia.[9]  The ALJ obtained additional evidence, and conducted a hearing on September 20, 2006.[10]  Magallanez complained about depression during the hearing,[11] so the ALJ sent Magallanez for a consultative psychological evaluation.   The ALJ conducted a third hearing on April 23, 2007, after the evaluation was completed.[12]  The ALJ issued a second decision on June 15, 2007,[13] and concluded that Magallanez is not disabled under the Act.[14]  Magallanez asked for review of the ALJ's decision. The SSA Appeals Council denied the request for review on November 15, 2007, after determining that no basis existed for reviewing the ALJ's decision.[15]  The ALJ's second decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  After receiving leave to proceed in forma pauperis,[16] Magallanez

---

[7]*Id*. at pp. 40-58.

[8]*Id*. at pp. 107-15 & 850-55.

[9]*Id*. at pp. 172-73.

[10]*Id*. at pp. 60-86.

[11]*Id*. at p. 73.

[12]*Id*. at pp. 87-103.

[13]*Id*. at pp. 17-25.

[14]*Id*. at p. 24.

[15]*Id*. at p. 7.

[16]Docket entry # 2.

filed this action on December 5, 2007, seeking review of the Commissioner's decision.[17]

**Issue Presented**

Is the ALJ's decision that Magallanez was not under a "disability,"
as defined by the Act, supported by substantial evidence and does
the decision comport with relevant legal standards?

**Analysis**

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[18]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[20]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[21]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its

---

[17]Docket entry # 3.

[18]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[19]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[20]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[21]*Martinez*, 64 F.3d at 173.

4

judgment for that of the Commissioner.[22]  Conflicts in the evidence and credibility assessments are

for the Commissioner and not for the courts to resolve.[23]  Four elements of proof are weighed by

the courts in determining if substantial evidence supports the Commissioner's determination: (1)

objective medical facts, (2) diagnoses and opinions of treating and examining physicians,

(3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education

and work experience.[24]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an

application for benefits, and is under a disability, is eligible to receive benefits.[25]  The term

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."[26]  A claimant shall be determined to be disabled only if her physical or

mental impairment or impairments are so severe that he is unable to not only do her previous work,

but cannot, considering her age, education, and work experience, participate in any other kind of

substantial gainful work which exists in significant numbers in the national economy, regardless of

whether such work exists in the area in which the claimant lives, whether a specific job vacancy

---

[22]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[23]*Martinez*, 64 F.3d at 174.

[24]*Id*.

[25]42 U.S.C. § 1382(a)(1) & (2).

[26]42 U.S.C. § 1382c(a)(3)(A).

exists, or whether the claimant would be hired if he applied for work.[27]

## 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[28]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[29]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[30]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[31]  The second step involves determining whether the claimant's impairment is severe.[32]  If it is not severe, the claimant is deemed not disabled.[33]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[34]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[35]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the

---

[27]42 U.S.C. § 1382c(a)(3)(B).

[28]20 C.F.R. §§ 404.1520 and 416.920.

[29]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[30]20 C.F.R. §§ 404.1520 and 416.920.

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Id.*

demands of her past work.[36]  If the claimant is still able to do her past work, the claimant is not

disabled.[37]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and

final step of evaluating the claimant's ability, given her residual capacities, age, education, and

work experience, to do other work.[38]  If the claimant cannot do other work, he will be found

disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[39]

Once the claimant has shown that he is unable to perform his previous work, the burden shifts to

the Commissioner to show that there is other substantial gainful employment available that the

claimant is not only physically able to perform, but also, taking into account his exertional and

nonexertional limitations, able to maintain for a significant period of time.[40]  If the Commissioner

adequately points to potential alternative employment, the burden shifts back to the claimant to

prove that he is unable to perform the alternative work.[41]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four of the evaluation process.  The

ALJ first determined that Magallanez was insured for the purpose of DIB until December 31,

2006.[42]  At step one, the ALJ determined that Magallanez hadn't engaged in substantial gainful

---

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Leggett*, 67 F.3d at 564.

[40]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[41]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[42]SSA record, p. 18.

activity since her alleged onset date.[43]  At step two, the ALJ determined that Magallanez has the

following severe impairments: systemic lupus ertyematosus, fibromyalgia, bilateral carpal tunnel

syndrome, degenerative disc disease of the lumbar spine, obesity, and major depressive disorder.[44]

At step three, the ALJ determined that Magallanez does not have an impairment or a combination

of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404,

subpart B, Appendix I (Appendix I).[45]  At step four, the ALJ determined that Magallanez has the

following residual functional capacity: Magallanez can lift/carry 20 pounds occasionally and 10

pounds frequently; walk/stand 2 hours and sit 6 hours in an 8-hour day with the opportunity to

change from a sitting position at will to relieve pain/discomfort; frequently, but not constantly,

handle, finger, and feel; occasionally climb ramps/stairs, balance, bend and stoop; and function

satisfactorily in carrying out detailed instructions and respond appropriately to work pressures in a

usual work setting, and generally function well in responding appropriately to changes in a routine

work setting and with interacting appropriately with the public, supervisors, and coworkers.[46]  The

ALJ determined that Magallanez cannot kneel, crouch, crawl, or climb ladders, ropes, or

scaffolds.[47]  After consulting with a vocational expert, the ALJ determined that Magallanez can

perform her past relevant work as travel a clerk and a cashier.[48]  The ALJ concluded that

---

[43]*Id.* at p. 20.

[44]*Id.*

[45]*Id.*

[46]*Id.*

[47]*Id.*

[48]*Id.* at p. 24.

Magallanez is not disabled as defined by the Act.[49]

## C.  Magallanez's Allegations of Error

In her first allegation of error, Magallanez maintains that the ALJ erred by not finding that her impairments meet an Appendix 1 listing.  She complains that the ALJ failed to identify which listings he considered and suggests that her fibromyalgia meets three listings—sections 1.02, 12.07 and 14.02.  Magallanez contends the Fifth Circuit's decision in *Hughes v. Shalala*[50] requires the district court to remand this case.  But Magallanez's reliance on *Hughes* is misplaced because no question exists whether the ALJ used the correct legal standards—the standards are set forth in the ALJ's opinion.[51]  In *Hughes*, the court of appeals questioned whether the ALJ required more than the applicable listing requires.[52]  Here, nothing indicates that the ALJ required more than required for sections 1.02, 12.07 or 14.02 require.  The ALJ questioned a medical expert about whether Magallanez's impairments "either singly or in combination meet or equal any listing," and the medical expert answered, "No."[53]  Before stating his step three determination, the ALJ discussed medical evidence about Magallanez's impairments.

Although the ALJ did not identify the listings he considered, Magallanez must show that

---

[49]*Id.*

[50]23 F.3d 957, 959 (5th Cir. 1994).

[51]*See* SSA record, p. 18.

[52]*See Hughes*, 23 F.3d at 959 (explaining that the record was unclear about whether the ALJ required the claimant to have a marked limitation of motion and x-ray evidence of significant joint space narrowing to meet the obesity listing, where the listing required the claimant to show a history of pain and limitation of motion associated with x-ray evidence of arthritis).

[53]SSA record, p. 66.

she was harmed in order to be entitled to relief.[54]  Magallanez did not meet that burden—she

cannot meet that burden because her condition does not meet the requirements for sections 1.02,

12.07 or 14.02.   Fibromyalgia is "[o]ne of a group of nonarticular (not affecting joints) rheumatic

diseases . . characterized by dull and persistent pain, tenderness, and stiffness of (1) muscles, (2)

regions where tendons are inserted into bones, and (3) nearby soft tissues.  These symptoms can be

due to overuse of muscles or be secondary to another, underlying disorder."[55]  Magallanez's

fibromyalgia does not meet section 1.02—major dysfunction of a joint(s)—because no evidence

exists of gross anatomical deformity, an inability to ambulate effectively, or inability to perform

fine and gross movements effectively.[56]  The record contains only an original diagnosis of

fibromyalgia reflecting tenderness at 18/18 trigger points—although no tenderness at fibromyalgia

---

[54]*See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that although the ALJ did not explain his step three determination, the claimant must demonstrate harm for a remand).

[55]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 2-F 1790 (Matthew Bender 2005).

[56]To meet section 1.02, evidence of the following must exist:

1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

OR

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P., app. 1., § 1.02.

control points—but no other objective medical evidence.[57]   Magallanez's fibromyalgia does not

meet section 12.07—somatoform disorders[58]—because no evidence exists of physical symptoms of

several years duration beginning before age 30; persistent nonorganic disturbance of vision,

speech, hearing, use of a limb, or movement and its control; unrealistic interpretation of physical

signs or sensations associated with the preoccupation or belief that one has a serious disease or

injury; marked restriction of activities of daily living; marked difficulties in maintaining social

functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated

episodes of decompensation, each of extended duration.[59]   The report of Magallanez's mental

---

[57]*See* SSA record, p. 337 (diagnosing fibromyalgia on January 7, 2004); p. 49 (testifying (medical expert) that he did not see any objective medical evidence of fibromyalgia); p. 50-51 (describing what a doctor would expect to see in terms of objective medical evidence of fibromyalgia); p. 776 (diagnosing fibromyalgia without evidence of connective tissue disease on October 4, 2005); p. 751 (reflecting diagnosis of fibromyalgia on January 3, 2006); p. 613 (observing on April 26, 2006 that fibromyalgia is stable).

[58]A somatoform disorder is "[a] condition marked by the presence of symptoms suggesting a physical disease but without physical changes or physiological mechanisms that might account for the symptoms.  In addition, there must be evidence, or a strong suggestion, that the symptoms have a psychogenic or psychologic origin."  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 5-S 4400 (Matthew Bender 2005).

[59]To meet section 12.07, evidence of the following must exist:

The required level of severity for [somatoform] disorders is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

a. Vision, or
b. Speech; or
c. Hearing; or
d. Use of a limb; or
e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or
f. Sensation (e.g., diminished or heightened).

11

status examination indicates that Magallanez reported that she takes care of her own grooming,

dressing, and hygiene although she needs assistance in putting on her undergarments; knows how

to pay bills, count money and check her change; is slightly limited in interacting with the public,

supervisors, and co-workers; is moderately restricted in responding to work pressures in a usual

work setting; and is slightly restricted in responding appropriately to changes in a routine work

setting.[60]  Magallanez's fibromyalgia does not meet section 14.02—systemic lupus

erythematosus[61]—because no evidence exists of a moderate level of severity involving an organ or

body system; severe fatigue, fever, malaise or involuntary weight lost; repeated manifestations of

systemic lupus erythematosus; marked limitation of activities of daily living; marked limitation in

maintaining social functioning; or marked limitation in completing tasks in a timely manner due to

---

3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief
that one has a serious disease or injury;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P., app. 1., § 12.07.

[60]SSA record, pp. 520-21.

[61]"Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system.
It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise,
involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis),
cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia,
leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition
(''lupus fog''), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis).
Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may
occur in a highly variable pattern."  20 C.F.R. pt. 404, subpt. P., app. 1., § 14.00D(1)(a).

deficiencies in concentration, persistence, or pace.[62]   The medical expert testified that Magallanez's

fibromyalgia "doesn't appear to be severe or have influenced any of the systems to a significant

degree" and that Magallanez was on a very low dosage of Prednisone—a medicine used in treating

fibromyalgia.[63]   Magallanez's medical record indicates that she reported on May 2, 2006 that she

came off of Prednisone without any complications.[64]   Magallanez demonstrated no harm resulting

from the ALJ's failure to specify the listings considered.   The record does not support harm.

In her second allegation of error, Magallanez complains that the ALJ failed to give

significant weight to her fibromyalgia and her depression.   For her complaint about fibromyalgia,

Magallanez relies on the Appeals Council's remand directing the ALJ to obtain additional evidence

concerning Magallanez's fibromyalgia, evaluate her fibromyalgia, and consult a vocational expert

if required.   The ALJ completed these tasks, but there was little evidence to consider.   The

---

[62]To meet section 14.02, evidence of the following must exist:

*14.02 Systemic lupus erythematosus.* As described in 14.00D1. With:

A. Involvement of two or more organs/body systems, with:

1.  One of the organs/body systems involved to at least a moderate level of severity; and
2.  At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

OR

B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1.  Limitation of activities of daily living.
2.  Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P., app. 1., § 14.02.

[63]SSA record, p. 53.

[64]*Id*. at p. 627.

13

evidence consists of the following: (1) the January 7, 2004 diagnosis of fibromyalgia,[65] (2) a record entry on October 4, 2005 reflecting diagnosis of fibromyalgia without evidence of connective tissue disease,[66] (3) a January 3, 2006 record entry reflecting diagnosis of fibromyalgia,[67] (4) a April 26, 2006 record entry stating that fibromyalgia is stable,[68] and (5) testimony by a medical expert that he didn't see any objective medical evidence of fibromyalgia in Magallanez's medical records.[69]  The ALJ discussed the evidence in his opinion.[70]  Magallanez complains that the ALJ should have attributed her numerous complaints to fibromyalgia.  There are two reasons this arguments fails: (1) Magallanez failed to meet her burden to prove that her fibromyalgia meets a listed impairment, and (2) most of the evidence following the January 7, 2004 diagnosis of fibromyalgia doesn't mention fibromyalgia.  Instead, the records document Magallanez's complaints about carpal tunnel syndrome and back pain, followup examinations for hypertension and back pain, occupational therapy efforts, and epidural steroid injections.  The ALJ did not err in his consideration of Magallanez's fibromyalgia.

As for Magallanez's complaints about the ALJ's consideration of depression, Magallanez has never relied on depression as the basis for disability.  When Magallanez applied for disability benefits, she alleged that she cannot work because her hands get stiff, she tires fast, and her bones

---

[65]*Id*. at p. 337.

[66]*Id*. at p. 776.

[67]*Id*. at p. 751 (finding no tenderness over fibromyalgia control points).

[68]*Id*. at p. 613.

[69]*Id*. at p. 49.

[70]*Id*. at pp. 20, 22 & 24.

14

hurt.[71]  During her first hearing, she testified that she can no longer work as a telemarketer because her hands and back hurt.[72]  But because she testified on May 2, 2005 that she gets "kind of depressed twice a month"[73] and had begun taking Prozac—a drug used in treating depression—the ALJ sent Magallanez for a psychological examination.  In the report of that examination, Dr. Sean G. Connolly reported the following limitations: (1) no limitation in understanding and remembering short, simple instructions; (2) no limitation in carrying out short, simple instructions, (3) moderate limitation in understanding and remembering detailed instructions; (4) moderate limitation in carrying out detailed instructions; (5) no limitation in making judgments on simple work-related decisions; (6) slight restriction in the ability to interact appropriately with the public, supervisors and co-workers; (7) moderate limitation in responding  appropriately to work pressure in a usual work setting, and (8) slight limitation in responding  appropriately to changes in a routine work setting.[74]  The other evidence about depression indicates that Magallanez has not experienced a significant degree of depression.[75]  The evidence is consistent with the ALJ's determination about Magallanez's residual functional capacity.  The ALJ determined that Magallanez can function satisfactorily in carrying out detailed instructions and respond appropriately to work pressures in a usual work setting, and can generally function well in

---

[71]*Id*. at p. 221.

[72]*Id*. at p. 45.

[73]*Id*. at p. 73.

[74]*Id*. at pp. 520-21.

[75]*See id*. at p. 710 (record entry dated December 14, 2005 stating "no depression"); p. 610 (record entry dated February 15, 2006 stating "no depression"); p. 613 (record entry dated April 26, 2006 prescribing Prozac for a trial period); p. 611 (record entry dated June 4, 2006 stating "no depression"); p. 541 (record entry dated October 2, 2006 indicating Magallanez asked for referral to psychiatric department); p. 589 (record entry dated February 23, 2007 reflecting Magallanez switched from Prozac to Cymbalta for depression)

15

responding appropriately to changes in a routine work setting and with interacting appropriately with the public, supervisors, and coworkers.[76]  The ALJ explained this finding in considerable detail in his opinion.[77]  The ALJ did not err in his consideration of Magallanez's depression.

In her third allegation of error, Magallanez contends the ALJ erred in assessing her residual functional capacity because the ALJ's determination does not consider limitation caused by depression.  In step four of the disability-determination process, the ALJ must determine whether the claimant can do her past work.[78]  The ALJ incorporated the limitations reflected in the report of Magallanez's psychological examination in his hypothetical question to the vocational expert.[79] The vocational expert testified that the limitations do not preclude a person from working as a cashier or a travel clerk.[80]  Although no treating physician addressed Magallanez's residual functional capacity, substantial evidence from consulting physicians supports the ALJ's determination: (1) physical residual functional capacity assessment by Dr. Kelvin A. Samaratunga, dated Mar. 20, 2003;[81] (2) physical residual functional capacity assessment by Dr. James A.

---

[76]*Id*. at p. 21.

[77]*Id*. at p. 23.

[78]20 C.F.R. §§ 404.1520 and 416.920.

[79]The ALJ included the following limitations in his hypothetical question: "[T]his person would have no limitations understanding, remembering and carrying out short, simple instructions or understanding, remembering detailed instructions or making judgment on simple work-related decisions.  The person would have moderate limitations in [carrying out detailed instructions].  So detailed instructions are moderate and this person would have slight limitations interacting with the public, supervisors and co-workers, moderate limitations [INAUDIBLE] respond[ing] appropriate[ly] to work pressures in a usual work setting and slight limitations [INAUDIBLE] to changes in the routine work setting." SSA record, p. 100.

[80]SSA record, p. 100.

[81]*Id*. at pp. 293-300 ( stating that Magallanez can lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk (with normal breaks) for about 6 hours in an 8-hour day, sit (with normal breaks) for about 6 hours in an 8-hour day, and is unlimited in pushing/pulling other than indicated for lifting/carrying).

Wright, dated Nov. 3, 2003;[82] (3) physical residual functional capacity assessment by Dr. Frederick

Cremona, dated Aug. 1, 2005, 2003;[83] (4) physical residual functional capacity assessment by Dr.

John Durfor, dated Oct. 19, 2005;[84] (5) Dr. Connolly's report;[85] (6) testimony by the vocational

expert on May 2, 2005;[86] (7) testimony by medical expert on May 2, 2005;[87] (8) testimony by the

vocational expert on  September 20, 2006;[88] and (9) testimony by the vocational expert on April

23, 2007.[89]  The ALJ did not err in his step-four analysis and determination.

### Recommendation

The ALJ made no error of law.  Substantial evidence supports the ALJ's determinations.

For these reasons, I recommend DENYING Magallanez's request for relief (docket entry # 3) and

AFFIRMING the Commissioner's decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and

recommendation on all parties by either (1) electronic transmittal to all parties represented by

attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not

---

[82]*Id*. at pp. 327-334 (making the same determinations as Dr. Samaratunga).

[83]*Id*. at pp. 495-502 (making the same determinations as Drs. Samaratunga and Wright).

[84]*Id*. at pp. 506-13 (making the same determinations as Drs. Samaratunga, Wright and Cremona).

[85]*Id*. at pp. 515-23.

[86]*Id*. at p. 57 (testifying that the claimant is able to work at a medium exertional level).

[87]*Id*. at p. 49 (opining that Magallanez can lift/carry 50 pounds and 25 pounds frequently, stand or walk 6 hours, and push/pull to the same extent as lift/carry, with mild limitation with manipulation).

[88]*Id*. at p. 82 (testifying that claimant is able to work as a travel clerk and a cashier).

[89]*Id*. at p. 100 (testifying that claimant is able to work as a travel clerk and a cashier).

17

registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[90]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[91]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[92]

**SIGNED** on September 25, 2008.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[90]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[91]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[92]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

18